IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| East Stroudsburg University of Pennsylvania, State System of Higher Education, | :<br>: No. 85 C.D. 2015<br>: Argued: September 17, 2015<br>: |
| Petitioner | :<br>: |
| v. | :<br>: |
| Association of Pennsylvania State College and University Faculties, | :<br>:<br>: |
| Respondent | : |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  October 19, 2015


East Stroudsburg University of Pennsylvania, State System of Higher Education (ESU), petitions for review of the December 23, 2014, arbitration award of Richard W. Dissen (Arbitrator), who sustained a grievance filed by Dr. John Freeman (Grievant) challenging the denial of his tenure application.  The Arbitrator ordered that Grievant be reinstated to his position as a chemistry professor and that he be permitted to re-apply for tenure.  We affirm.

In 2005, then-ESU President Robert Dillman hired Grievant as a probationary, tenure-track assistant chemistry professor.  Grievant is a member of a bargaining unit represented by the Association of Pennsylvania State College and

University Faculties (Union) and a signatory to a collective bargaining agreement (CBA).

In 2010, after the expiration of his five-year probationary period, Grievant applied for tenure, which President Dillman denied based on lack of scholarly growth.[1] Based on this denial, ESU terminated Grievant's employment in the spring of 2012. Grievant filed a grievance under the CBA. In August 2012, new ESU President Marcia Welsh[2] rescinded Grievant's tenure denial, reinstated Grievant to his prior, tenure-track position, and permitted him to re-apply for tenure by December 31, 2012.

On December 21, 2012, Grievant re-applied for tenure, which President Welsh denied on May 30, 2013, based on lack of scholarly growth. Grievant filed a grievance, alleging, *inter alia*:

> Despite positive recommendations by his department committee and the University-Wide Tenure Committee, [President Welsh] decided to deny the Grievant tenure. The

---

[1] Under Article 12.B.2. of the CBA, "scholarly growth" includes:

development of experimental programs (including distance education), papers delivered at national and regional meetings of professional societies; regional and national awards; offices held in professional organizations; invitational lectures given; participation in panels at regional and national meetings of professional organizations; grant acquisitions; editorships of professional journals; . . . consultantships; research projects and publication record; additional graduate work; contribution to the scholarly growth of one's peers; and any other data agreed to by the FACULTY and Administration at local meet and discuss [sic].

(R.R. at 385a.)

[2] President Welsh assumed the presidency on July 1, 2012. (N.T., 9/23/14, at 22.)

2

department chair had provided an unfavorable recommendation for tenure, although he had previously (as a member of the department evaluation committee) been supportive of the Grievant's first application for tenure.

[Because] two of the three tenure recommendations were positive, . . . Article 15.E.4 [of the CBA] provides the Grievant the opportunity to grieve the denial of tenure.

(R.R. at 524a.)[3]

The grievance proceeded to arbitration.[4] The Arbitrator held hearings on September 23 and 24, 2014. The issues before the Arbitrator were whether ESU violated the CBA by denying Grievant's tenure application and, if so, what was the appropriate remedy.

Much of the evidence presented at the arbitration hearing involved the quality of scholarship performed by Grievant and whether those scholarly activities justified a grant of tenure. The parties also presented evidence regarding the

---

[3] Article 15.E.4. of the CBA provides:

The President shall grant tenure effective as of the beginning of the next academic term to those FACULTY MEMBERS whom he/she approves and such decisions shall not be subject to the provisions of Article 5 [of the CBA] . . . . However, if at least two (2) of the three (3) recommendations (department committee, University-wide committee, department chairperson) are positive with respect to the granting of tenure and the President denies tenure, the FACULTY MEMBER shall have the right to grieve the denial of tenure in accordance with the terms of Article 5 [of the CBA].

(R.R. at 396a.)

[4] The Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301, governs the arbitration of Union-member grievances.

3

procedure used by President Welsh to review Grievant's tenure application as well as the tenure-review procedures outlined in Article 15 of the CBA. (*See* R.R. at 395a-98a.)

The Arbitrator concluded that ESU violated the tenure-review procedures set forth in the CBA. The Arbitrator found that President Welsh unilaterally modified the tenure-review process in the CBA and engaged in conduct that undermined the CBA. Of particular significance was President Welsh's admission at the hearing that she did not review the recommendations of the university-wide tenure committee or the department chairperson before reaching her decision. The Arbitrator explained:

> Although the President might assert that the recommendations of colleagues are inherently suspect, the parties have nonetheless negotiated and jointly established a procedure that mandates faculty input in tenure decisions. The President was not free to disregard the procedural directives of the [CBA]. . . .
>
> . . . Although the President could certainly disagree with recommendations of committees and the department chairperson, she could not validly reach a final determination without considering the faculty recommendations first. The President's departure from the procedure mandated by the [CBA] denied the Grievant the full scope of information that should have been within the President's knowledge at the time that she reached a decision.

(Arb. Award at 25-26.) The Arbitrator noted that at the time of Grievant's application, President Welsh was new to ESU and had only been in office a short time; thus, she undoubtedly would have benefited from the faculty recommendations, which had been accumulated over five years, before reaching her decision. (*Id.* at

4

27.)  Furthermore, the Arbitrator agreed with the Union that President Welsh improperly consulted with the ESU Provost before issuing her decision, finding that "[i]n the absence of a complete delegation of her tenure[-]review authority, [President Welsh] was not free to include [in the tenure-review process] administrators or other parties not contemplated by the parties' [CBA]." (*Id.* at 28.)

Therefore, the Arbitrator sustained the grievance and ordered that Grievant be reinstated to his position with the opportunity to re-apply for tenure and have his application reviewed by an independent official other than President Welsh or the Provost. (*Id.* at 31.)  The Arbitrator also determined that Grievant should be reimbursed for all lost wages, benefits, seniority, and other emoluments of employment that he would have received but for the improper tenure denial. (*Id.*) ESU now petitions for review of that decision.[5]

First, ESU argues that the Arbitrator's decision fails to draw its essence from the CBA because the CBA does not require President Welsh to review a tenure application in a specific manner, nor does it preclude President Welsh from consulting with the Provost on tenure matters. It is well settled that an arbitration award under PERA must draw its essence from the CBA. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Under the "essence" test, this court will uphold an arbitration award if:  (1) the issue, as properly defined, is within the terms

---

[5] Our scope of review of an arbitration award is one of deference. *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College and University Faculty*, 71 A.3d 353, 358 (Pa. Cmwlth.), *appeal denied*, 83 A.3d 169 (Pa. 2013).  Our review of an arbitration award is limited to determining whether the award draws its essence from the CBA or violates an established public policy. *Id.*

of the CBA; and (2) the award is rationally derived from the CBA. *Id.* This court will vacate an arbitration award only if "the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Id.*

Here, ESU concedes that the first prong of the essence test has been met because the issue of whether President Welsh violated the tenure-review process is within the terms of the CBA. ESU argues, however, that by requiring President Welsh to review the committee recommendations before conducting her own review of Grievant's application, the Arbitrator improperly added terms to the CBA. We disagree.

Article 15 of the CBA prescribes a detailed procedure by which faculty committees and department chairpersons are to submit written tenure recommendations to the president within specific timeframes. (*See* R.R. at 395a-98a.) While the president may ultimately disagree with those recommendations, he or she cannot make a decision without first considering them. In fact, Article 15.E.6. of the CBA expressly permits the president to "act independently" on a tenure decision *only* "if the committee(s) fail [sic] to act within the time limits specified [for submitting their written recommendations to the president]." (R.R. at 397a.) Here, President Welsh admitted that she did not consider the faculty assessments before reaching her decision and reviewed them only after she conducted her own independent review of Grievant's application. (N.T., 9/23/14, at 38-39.) As the Arbitrator appropriately observed, "It is implausible that the parties mutually established a procedure contemplating extensive faculty input but implicitly agreed that [such] input, if provided, need not be considered before arriving at a final determination." (Arb. Award at 25.)

6

Furthermore, we agree with the Arbitrator that President Welsh impermissibly consulted with the Provost before denying Grievant's application. (*See* N.T., 9/23/14, at 59, 92.) While the president may select a "designee" to carry out the president's Article 15 duties (*see* Article 15.E.3. of the CBA; R.R. at 396a), the CBA does not authorize the president to consult with parties not specified in the CBA's tenure-review process. Therefore, absent a complete delegation of her duties, President Welsh was not free to consult with the Provost before rendering her decision.

Next, ESU asserts that the Arbitrator violated the express terms of the CBA and section 2010-A(1) of the Public School Code of 1949 (Code)[6] by mandating that someone other than President Welsh or the Provost review Grievant's tenure application. We disagree.

Section 2010-A(1) of the Code authorizes the president to make employment decisions "[e]xcept insofar as such matters are governed by [CBAs] entered pursuant to [PERA]." 24 P.S. §20-2010-A(1). Here, Article 15.E.3. of the CBA permits President Welsh to designate another university official to review tenure applications in her stead. Based on the evidence presented at the hearings, the Arbitrator determined that the judgments of both President Welsh and the Provost

---

[6] Act of March 10, 1949, P.L. 30, added by section 2 of the Act of November 12, 1982, P.L. 660, *as amended*, 24 P.S. §20-2010-A(1). Section 2010-A(1) of the Code provides, *inter alia*, that "[t]he president of each institution . . . shall be the chief executive officer of that institution" and shall have the power "to establish policies and procedures governing employment rights, promotion, dismissal, tenure, leaves of absence, grievances and salary schedules," with the exception of matters governed by CBAs under PERA. 24 P.S. §20-2010-A(1).

regarding Grievant's tenure application were irreversibly tainted by their prior conduct. Thus, due to the procedural infirmities of Grievant's prior tenure-review process, the Arbitrator created an appropriate remedy to ensure that Grievant's new tenure application would be fairly evaluated.

Finally, ESU asserts that even if the Arbitrator's award were rationally derived from the CBA, it violates public policy and should be vacated. Under the public policy exception to the essence test, an arbitration award may be set aside if it violates a "well-defined, dominant" public policy "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Westmoreland Intermediate Unit No. 7 v. Westmoreland Intermediate Unit No. 7 Classroom Assistants Educational Support Personnel Association*, 939 A.2d 855, 866 (Pa. 2007). In deciding whether to apply the public policy exception, the court must consider: (1) the nature of the employee's conduct leading to his or her discipline; (2) whether the employee's conduct implicates a well-defined, dominant public policy; and (3) whether the arbitration award poses an unacceptable risk that it will undermine the implicated policy. *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College and University Faculty*, 71 A.3d 353, 363 (Pa. Cmwlth.), *appeal denied*, 83 A.3d 169 (Pa. 2013).

ESU claims that the award violates public policy by divesting President Welsh of her exclusive authority to make employment decisions on ESU's behalf. We cannot agree. Under the circumstances, the Arbitrator acted appropriately in requiring President Welsh to exercise her authority under the CBA to designate an impartial third party to review Grievant's tenure application in order to ensure a fair

8

assessment of his candidacy. The Arbitrator's award violates neither the law nor a well-defined, dominant public policy.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| East Stroudsburg University of Pennsylvania, State System of Higher Education, | : |
| | : No. 85 C.D. 2015 |
| | : |
| | : |
| Petitioner | : |
| | : |
| v. | : |
| | : |
| Association of Pennsylvania State College and University Faculties, | : |
| | : |
| Respondent | : |

O R D E R


AND NOW, this 19<u>th</u> day of <u>October</u>, 2015, we hereby affirm the December 23, 2014, arbitration award.


_____
ROCHELLE S. FRIEDMAN, Senior Judge