DISSENTING OPINION BY
President Judge PELLEGRINI.
The sole issue in this case is whether an arbitrator may award tenure when she finds that an application for tenure was denied only because an improper criterion was used to review it. The majority *331 agrees that an arbitrator had the power to review a tenure denial by Edinboro University of Pennsylvania, State. System of Higher Education’s (Edinboro) President, and does not dispute the arbitrator’s authority based upon her finding that the President did not apply the correct criterion in concluding that Grievant did not demonstrate “continuing ' scholarly growth,” to direct that Grievant be reinstated as a probationary employee and resubmit her tenure application. However, the majority finds that the arbitrator is without power to grant tenure, as she did here, because that decision is within the sole discretion of the President. Because that holding is directly contrary to our recent decision in East Stroudsburg University of Pennsylvania, State System of Higher Education v. Association of Pennsylvania State College and University Faculties, 125 A.3d 870 (Pa.Cmwlth.2015), I respectfully dissent.
Edinboro hired Barbara Miller, Ph.D. (Grievant) as an assistant professor on the tenure track in its Professional Studies Department’s Educational Leadership Program effective August 16, 2008. Following 4.5 years of probationary employment and a promotion to associate professor in 2011,[1] Grievant applied for tenure pursuant to the terms of . the collective bargaining agreement (CBA) to which Ed-inboro and Grievant’s collective bargaining agent, the Association of Pennsylvania State College and University Faculties (APSCUF), are parties.
Regarding the procedure for tenure, Article 15(E) of the CBA provides that the applicant’s Department Tenure Committee must first provide to the University-wide Tenure Committee a list of all fifth-year, probationary faculty members who have applied for tenure and whom the Department Tenure Committee recommends for tenure. At the same time, the Department Tenure Committee Chairperson must make an independent: ¡ recommendation. Next,, the University Tenure Committee must submit its recommendations to the President, who “shall grant tenure effective as of the beginning of the next academic term to those FACULTY MEMBERS whom he/she approves.” (R.R. at 401a.) In cases where two of the three *332 recommendations made to the President are positive and the President denies tenure, the applicant may file a grievance in accordance with the procedure set forth in Article 5 of the CBA, providing for a three-step resolution process. If the grievance is not resolved in these steps, grievances proceed to binding arbitration as follows:
Step Four — Binding Arbitration. If the Grievance has not been resolved at Step Three, [the Association], but not an individual FACULTY MEMBER or group of FACULTY MEMBERS, has the sole right to refer a grievance to arbitration and to conduct the proceeding as a party, and shall within forty (40) calendar days of the receipt of the written response from Step Three submit a written notice to the Chancellor of the STATE SYSTEM or his/her designee of its intent to submit the grievance to binding arbitration. It is understood that only [the Association], or counsel for [the Association], may present the case in support of any grievance at arbitration.
¡J: ^
The decision of the arbitrator shall be final and binding upon the parties, except where the decision would require an enactment of legislation in which case the decision shall be binding only if and when such legislation is enacted. The arbitrator shall have no authority to add to, subtract from, or modify this Agreement. Each case shall be considered on its merits and this collective bargaining agreement shall constitute the sole basis upon which the decision shall be rendered .... The arbitrator shall confine himself/herself to the precise issue the parties have agreed to submit for arbitration and shall have no authority to determine any other issues not so submitted to him/her....
(Id. at 372a-373a.).
After Grievant submitted her application to the Department of Professional Studies Tenure Committee, its Chair, Dr. Susan H. Packard, “strongly recommend[ed]” Griev-ant for tenure. Likewise, Dr. Marian S. Beckman, Chairperson of the Department of Professional Studies, recommended Grievant for tenure, as did the University Tenure Committee by unanimous vote. However, Edinboro’s President, Julie B. Wollman, Ph.D., ultimately denied Griev-ant tenure, advising, “[q]uite simply, your scholarly growth is minimal and the quality of scholarship that you have produced over your first four and one half (4$) years as a probationary faculty member at Edin-boro University of Pennsylvania is not adequate for tenure and the privileges pertaining thereto.” (Id. at 282a.) President Wollman elucidated that her review was based on both the quality and quantity of Grievant’s scholarly products, and she stated that Grievant’s application “fails to demonstrate that [her] scholarly contributions have progressed during [her] probationary period to a level where, in my professional judgment, tenure is warranted.” (Id.)
APSCUF filed a grievance contending that Edinboro violated Articles 12[2] and 15 *333 of the CBA when it denied Grievant tenure. The matter eventually proceeded to arbitration where the parties stipulated to the following issue: “Did [Edinboro] violate the [CBA] by denying tenure to the [G]rievant, and, if so, what shall the remedy be?” (Arbitration Award,’at 1.) The pertinent inquiry before this Court is whether the arbitrator' was authorized to award tenure under the CBA or whether such a decision is solely within the purview of the President.
East Stroudsburg University of Pennsylvania, State System of Higher Education v. Association of Pennsylvania State College and University Faculties, 125 A.3d 870 (Pa.Cmwlth.2015), a recent decision by this Court, involved identical language in the same CBA and the very issue before us now. In that case, the arbitrator ordered that a professor whose tenure application was improperly denied by a university president also purportedly based upon a lack of scholarly growth be provided the opportunity to re-apply for tenure, and that his application be reviewed by an independent official other than the university president. Id., at 872-73. In affirming the award, we explained that “the Arbitrator created an appropriate remedy to ensure that Grievant’s new tenure application would be fairly evaluated,” despite the fact that the CBA did not expressly permit the arbitrator to order review by someone other than the university president. Id., at 874. This holding makes clear that a university president does not have absolute and exclusive authority over decisions regarding tenure applications, which are subject to substantive review by others.
Moreover, our decision in Bloomsburg University of Pennsylvania of the State System of Higher Education v. Association of Pennsylvania State Colleges and University Faculties, 123 Pa.Cmwlth. 192, 552 A.2d 1180 (1989), does not stand for the proposition that an arbitrator is limited to remanding a tenure application to the university for reconsideration because a university’s president retains sole control over employment decisions. In Blooms-burg, a tenure-track professor applied for and was denied tenure by the university president after the department committee and department chair recommended that tenure be granted but the university-wide committee disagreed. Id. at 1181. Ultimately, the arbitrator resolved the grievance pursuant to a CBA containing the same language at issue here, ordering the professor’s reinstatement to probationary status, and granting him the right to reapply for tenure because the arbitrator found that the. university faded to consider all of the relevant evidence submitted. Id. In affirming the arbitrator’s award, we stated:
We recognizé that the agreement stipulates that “[t]he arbitrator shall have no authority to add to, subtract from, or modify this Agreement.” Article XV, section D. We also recognize that, unless the agreement specifically addresses the decided award, any award could be construed as a modification.
*334 The arbitrator must be permitted a great degree of discretion in fashioning an award, consistent with the intent of the agreement, that resolves the situation in a just manner. In light of the fact that Arbitrator Jaffe remediéd a specific violation of the agreement and did not explore territories beyond his - area of expertise,- in that he expressly declined to evaluate the tenure applica- ' tion, he did not exceed his authority and there is no need for this court to disturb the award.
Id. at 1182. Unlike this appeal, where all of the reviewing entities recommended the grant of tenure and the President applied the wrong criterion, in Bloomsburg, the university-wide committee and the president failed to consider relevant evidence. The arbitrator in that case fashioned a remedy fitting the facts as did the arbitrator here.
Because East Stroudsburg holds that the President does not have sole and exclusive authority to ■ grant tenure, I would hold that the arbitrator acted within her authority in fashioning the remedy in this case. In accordance with our long-established precedent, the arbitrator must be given the flexibility to order this remedy. Where, as here, it is necessary to the just resolution of the grievance, and thereby draws its essence from the CBA, I would not disturb the award.

. In addition to fulfillment of professional responsibilities, effective teaching, and contributions to the university and community, applicants for tenure must demonstrate continuing scholarly growth. Article 12(B)(2) of the CBA regarding a- faculty’s performance reviews and-evaluations lists the following as relevant factors in considering an applicant's continuing scholarly growth:
development of experimental programs (including distance education), papers delivered at national and regional meetings of professional societies; regional national awards; offices held in professional organizations; invitational lectures given; partic *333 ipation in panels at. regional and national meetings of professional organizations; grant acquisitions; editorships of professional journals; participation in juried shows; program-related projects; quality of musical or theatrical performances; participation in one-person or invitational shows; consultantships; research projects and publication records; additional graduate work; contribution to the scholarly growth of one’s peers; and any other data agreed to by the FACULTY and Administration at local meet and discuss [sic ].
(R.R. at 390a.) It also provides that “[w]hen evaluating the data; the appropriate evaluator^) shall give greater weight to the quality of the performance reflected in the data, than to the quantity of the data.” (Id. at 389a.)